

**Signed and Filed: January 22, 2018**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AARON HUGH BRAUN,<br><br>　　　　　　　Debtor.<br>_____<br>CADOGAN MANAGEMENT, LLC,<br>　　　　　　　Plaintiff,<br>　v.<br>AARON HUGH BRAUN,<br>　　　　　　　Defendant.<br>_____ | ) Bankruptcy Case<br>) No. 17-10080-DM<br>)<br>) Chapter 7<br>)<br>)<br>)<br>)<br>)<br>) Adv. Proc. No. 17-03024<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM DECISION ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

On November 17, 2017, this court held a hearing on the motion for partial summary judgment ("MSJ") filed by plaintiff Cadogan Management, LLC ("Cadogan"), contending that a state court judgment owed to it by defendant and debtor Aaron Hugh Braun ("Debtor") is nondischargeable. Cadogan asserted that the state court judgment precludes Debtor from disputing and litigating the nondischargeability of the resulting judgment debt.

-1-

At the hearing, this court raised the issue of whether the state court had "necessarily decided" the issues underlying the state court judgment, an essential element for the application of issue preclusion. In particular, the facts alleged in the state court complaint supported multiple claims, including breach of contract against Debtor's co-defendants. Cadogan filed a supplemental brief; Debtor did not. Having considered the pleadings and the supplemental briefing, and for the reasons set forth below, the court will grant partial summary judgment in favor of Cadogan.

I. UNDISPUTED FACTS

A. Claims Asserted Against Debtor in the State Court Action

In 2001, Cadogan filed an action against Debtor, Willow Creek Short Biased 30/130 Fund, L.P. ("WC Fund"), and WC Capital Management, LLC ("WC Management") in the Marin County Superior Court (the State Court Action"). The first four causes of action of the complaint ("State Court Complaint") alleged breach of contract against WC Management only. The fifth cause of action asserted breach of fiduciary duty against WC Management and Debtor and the sixth cause of action asserted conversion against all defendants. *See* Cadogan's Request for Judicial Notice ("RJN") at Docket 16-1, Exhibit A.

The seventh cause of action asserted trespass to chattels against all defendants, alleging that they had

> not only failed and refused to refund the Remaining Balance, they have also used the Remaining Balance to fund an unauthorized trading scheme for their own benefit. In so doing, Defendants have wrongfully exercised dominion and control over the Remaining Balance, and misappropriated such funds to their own use.

*See* Cadogan's RJN at Docket 16-1, Exhibit A at paragraphs 51-53.

The eighth, ninth and tenth causes of action sought an accounting, the imposition of a constructive trust, and injunctive relief against all defendants. *See* Cadogan's RJN at Docket 16-1, Exhibit A at paragraphs 51-53.

B. <u>Factual Allegations Supporting Claims Against Debtor in the State Court Action</u>

Paragraphs 5-8 of the State Court Complaint describe the transactions giving rise to Cadogan's claims: the failure of WC Funds to return balances in certain capital accounts to which Cadogan was contractually entitled. *See* Cadogan's RJN at Docket 16-1, Exhibit A at paragraphs 5-8. According to paragraph 8, the balance which WC Management was contractually required to remit to Cadogan was $1,266,549.50, excluding interest (the "Remaining Balance"). The last sentence of paragraph 8 provides a preview of the claims against Debtor individually: "On information and belief, WC Management and Braun [Debtor] misappropriated the Remaining Balance and used these funds to continue trading for their own benefit and/or for the benefit of WC Fund, in derogation of their duties to Cadogan Funds." *Id.*

Paragraphs 9-12 of the State Court Complaint describe the purported misappropriation of the Remaining Balance by Debtor and the other defendants. In particular, paragraph 11 alleges that "Defendants, *and each of them*, used the remaining balance of the Cadogan Funds' capital accounts to continue trading. . . . Defendants' unauthorized trading resulted in substantial losses [reducing the Remaining Balance from $1,266,549.50 to $850,000]." *Id.* at ¶¶ 11-12 (emphasis added).

In the allegations supporting its fifth cause of action (for breach of fiduciary duty) against Debtor individually, Cadogan asserted that Debtor acted as the manager of WC Management and portfolio manager of WC Funds and thus owed fiduciary duties to WC Funds's limited partners, including Cadogan. *Id.* at ¶ 39. Cadogan further alleged that Debtor knowingly breached those fiduciary duties by using the Remaining Balance to continue trading instead of turning them over to it. *Id.* at ¶ 40. "As the manager of WC Management and portfolio manager of WC Fund, it was [Debtor's] duty to ensure that WC Management held the Remaining Balance until such time as it could be returned to the Cadogan Funds. [Debtor] failed to discharge this duty. Instead, [Debtor] embarked on a course of unauthorized trading, in breach of [Debtor's] fiduciary duties to the Cadogan Funds." *Id.*

Similarly, in support of its sixth cause of action (conversion), Cadogan alleged in paragraph 46 of the State Court Complaint that the defendants (including Debtor) "not only failed and refused to refund the Remaining Balance, they have also used the Remaining Balance to fund an unauthorized trading scheme for their own benefit. In so doing, Defendants have wrongfully exercised dominion and control over the Remaining Balance, and misappropriated such funds to their own use." *Id.* at ¶ 46.

Likewise, in support of the seventh cause of action for trespass to chattels against Debtor and the other state court defendants, Cadogan re-asserted the foregoing factual allegations and further alleged that Debtor "intentionally took possession of the Remaining Balance and prevented Cadogan from exercising the rights and benefits associated therewith." *Id.* at ¶ 40.

Finally, as remedies to the torts alleged against Debtor and the other defendants, Cadogan realleged the foregoing facts and sought an accounting (the eighth cause of action), the imposition of a constructive trust (the ninth cause of action) and injunctive relief (the tenth cause of action). *Id.* at ¶¶ 54-66.

C. <u>The State Court Judgment</u>

On August 2, 2011, Cadogan filed an Application for Court Judgment ("Default Application") in state court setting forth the facts alleged in the State Court Complaint, as well as supporting declarations and exhibits. *See* Cadogan's RJN at Docket 16-1, Exhibit B. The state court thereafter entered a judgment in favor of Cadogan and against Debtor upon the Default Application "and having considered the evidence." *Id.* at Exhibit C. Debtor filed his chapter 7 case on February 8, 2017.

D. <u>Admissions by Debtor in this Adversary Proceeding</u>

Cadogan's complaint initiating this adversary proceeding (the "AP Complaint") alleges that WC Fund was a hedge fund established to manage investments by Cadogan and that WC Management was the general partner of WC Fund. AP Complaint at Docket No. 1, ¶ 6. It further alleges that Debtor was the manager of WC Management and the portfolio manager of WC Fund "and, in fact exercised total and complete executive control and power over WC Management and WC Fund." *Id.* at ¶ 7. In his answer filed on May 15, 2017, Debtor admits both allegations. *See* Answer, Docket No. 9, ¶ 4.

Paragraph 8 of the Complaint alleges that between May 1, 2008 and April 1, 2009, Cadogan made several investments in the WC Fund. Each was made pursuant to the WC Fund's First Amended and Restated Agreement of Limited Partnership ("Partnership Agreement") and the

-5-

WC Fund Confidential Offering Circular (the "Offering Circular" or "OC"). AP Complaint at Docket No. 1, ¶ 8.

Paragraphs 9 and 10 of the Complaint further allege that the Partnership Agreement expressly provided that (1) as general partner of WC Fund, WC Management had a fiduciary duty to Cadogan, and (2) that Debtor was the manager of WC Management and the portfolio manager of WC Fund. *Id.* at ¶ 9-10. Debtor admitted these allegations of paragraphs 8, 9 and 10 of the Complaint. *See* Answer, Docket No. 9, ¶ 4.

Most importantly, Debtor admitted the allegations of paragraph 10 of the Complaint:

> The Partnership Agreement also expressly provides that [Debtor] was the Manager of the limited liability corporation, WC Management, and the portfolio manager of the limited partnership, WC Fund. As Manager of WC Management and portfolio manager of WC Fund, [Debtor] had a fiduciary duty to Cadogan.

*See* AP Complaint at Docket No. 1, ¶ 10; Answer, Docket No. 9, ¶ 4.

## II. DISCUSSION

Under the Federal Full Faith and Credit Statute (28 U.S.C. § 1738), "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."; 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Thus, the claims brought by Cadogan are subject to California's principles of issue and claim preclusion. *Id.*; *Allen v. McCurry*, 449 U.S. 90, 97–98 (1980) (preclusive effect in federal court of state proceedings is same as that accorded in state's own courts).

Issue preclusion (often called "collateral estoppel") forecloses relitigation of matters that have already been decided in prior proceedings. *Paine v. Griffin (In re Paine),* 283 B.R. 33, 39 (9th Cir. BAP 2002); *see also Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir.2001)(applying California law), *quoting Lucido v. California*, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990); Christopher Klein, et al, Principles of Preclusion & Estoppel in Bankruptcy Cases, 79 Am. Bankr.L.J. 839, 852 (2005). For issue preclusion to apply, the following elements must be satisfied:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Harmon*, 250 F.3d at 1245. To conclude that the issue was "necessarily decided," the issue must not have been "entirely unnecessary" to the judgment in the prior proceeding. *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 342 (1990). As the Ninth Circuit held in *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir. 1992), for issue preclusion to apply, the determination of an issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

As the court noted at the hearing on November 17, Cadogan established all but one of the foregoing elements to the court's satisfaction. The court questioned, however, whether the state court had necessarily decided the breach of fiduciary duty and other tort claims as the facts alleged could have supported the

-7-

"lesser included counts" such as breach of contract.  But the breach of contract claim was not pled against Debtor; the causes of action pled against him consisted of breach of fiduciary duty as well as other torts.  Thus the entry of the judgment necessarily required a determination that Debtor owed a fiduciary duty to Cadogan, that he breached that fiduciary duty and that Cadogan was damaged by that breach.

Even in the absence of the state court judgment, Debtor's admissions to paragraphs 6-10 to the AP Complaint demonstrate that he owed a fiduciary duty to Cadogan that arose separate from and prior to the commission of the alleged wrongdoing.  Those paragraphs allege a fiduciary duty that arose prior to the wrongdoing: one that was contractual in nature, arising from WC Fund's First Amended and Restated Agreement of Limited Partnership and the WC Fund Confidential Offering Circular.  They further allege that Debtor had "total and complete executive control and power over WC Management and the WC Fund."  Debtor admitted all of these allegations.

III. CONCLUSION

Given that the state court breach of contract claims were alleged only against WC Funds and not against Debtor, and given that additional facts supporting the breach of fiduciary duty and other intentional torts against Debtor were pled separately in the State Court Complaint, the court concludes that the latter issues were indeed "necessarily decided" against Debtor by the state court.

Furthermore, in light of Debtor's admissions in this adversary proceeding that he acted as a fiduciary to WC Funds and the state

-8-

court's determination that he breached this fiduciary duty, the court will grant partial summary judgment against Debtor pursuant to 11 U.S.C. § 523(a)(4).  In light of this determination, the court has not reached the issue of whether the Debtor's obligation is nondischargeable under 11 U.S.C. § 523(a)(6).  If Cadogan chooses not to pursue the section 523(a)(6) and the section 523(a)(19) claims further, it should dismiss those claims and submit (and file proof of compliance with B.L.R. 9021-1(c)) an order granting the MSJ and a separate judgment determining the state court judgment nondischargeable pursuant to section 523(a)(4).  The court will then take the status conference set for January 26, 2018, off calendar.  If Cadogan chooses to pursue the alternate relief of sections 523(a)(6) or (a)(19), the January 26 status conference will go forward.  Counsel for Cadogan should notify the court and Debtor by noon on January 25, 2018, how Cadogan wishes to proceed.

**\*\*END OF MEMORANDUM DECISION\*\***

## Court Service List

```
Aaron Hugh Braun
45 Evergreen Drive
Greenbrae, CA 94904
```